OPINION
Appellant, Idell Ferguson, appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, convicting him of attempted murder, in violation of R.C. 2903.02, and felonious assault, in violation of 2903.11, both with a firearm specification.
On April 21, 2000, trial commenced before the Lake County Court of Common Pleas, Juvenile Division. During the trial, the victim, Charles Ward ("Ward"), testified that he had driven Carol Pearson's ("Pearson") car from Fairport, Ohio to Painesville, Ohio, on December 18, 1999. While in Painesville, Ward saw appellant and Quinton Gaines ("Gaines") and offered them a short ride. Appellant entered the automobile and asked Ward if he owed appellant any money. Ward responded that he did not.
Upon reaching the Pearson's residence, Gaines, appellant, and Ward exited the car. Ward handed Pearson's keys to her daughter and stopped to speak to Randy Guilford. Ward testified that upon seeing a red Oldsmobile, which was his ride back to Fairport, pull into Pearson's driveway, he entered the car and sat in the back seat, behind the driver. As the Oldsmobile began to pull away, Ward observed appellant, brandishing a nine-millimeter gun, and Gaines running towards the car.
Ward testified that appellant pointed the gun at Ward's head, and, without saying a word, pulled the trigger. The gun did not go off. Ward testified that he told the driver, "Get out of here. He's got a gun." Ward stated that he ducked, heard gunshots, observed glass from the rear window shatter, and felt the sensation of bullets entering his body, as the car continued to move forward. Ward testified that, at the time he ducked, appellant was standing outside the driver's side door, to the left of the car, and Gaines was standing to the right, behind the Oldsmobile. The Oldsmobile sustained no damage other than the shattered rear window. Ward was struck twice, once in his left rib area and once in his right buttock. The driver of the car took Ward to LakeEast Emergency Room.
While at LakeEast Emergency Room, Ward spoke briefly with Patrolman Bailey of the Painesville Police Department and identified the shooter as "the youngest Ferguson." Ward testified that he had known the appellant, whom he called "Little Wardell"[1] or "Pumpkin," since 1989. Appellant was later life-flighted to Cleveland Metro Hospital for surgery.
Detective Robert J. Sayer ("Detective Sayer") testified that he spoke to Ward twice. Detective Sayer testified that he conducted two question and answer interviews with Ward. Ward identified appellant as the shooter and also picked the appellant in a six-photograph line-up. Detective Sayer testified that the owner of the red Oldsmobile, Jack Lederer, was unable to identify anyone in the photo lineup.
Detective Sayer testified that two-nine millimeter shell castings, which were recovered from the crime scene, were not tested because no firearm was recovered. He also explained that fingerprints were not taken from the recovered casings due to damp weather conditions.
While there was some dispute[2] regarding who may have witnessed the shooting, the only witness to testify was the victim, Ward. Appellant did not present any witnesses or evidence. At the close of the state's case-in-chief, appellant moved for acquittal, pursuant to Crim.R. 29. Appellant's motion was overruled.
On April 24, 2000, the court found the allegations of attempted murder and felonious assault to be true, including the gun specification for each count. The court dismissed the charge of carrying a concealed weapon. On April 26, 1999, appellant was sentenced to an indefinite term at the Department of Youth Services consisting of: a minimum of seven years, or until he reaches the age of twenty-one, on Count One; an indefinite period of three years, or until he reaches the age of twenty-one, on Count Two, to be served consecutively to the sentence on Count One; and, an additional three year confinement for the firearm specification, to be served consecutively to and prior to, the sentence on Count One. From this judgment, appellant assigns the following as error:
 "[1.] The trial court erred to the prejudice of the juvenile when it denied his motion for acquittal made pursuant to Crim.R. 29.
 "[2.] The trial court erred to the prejudice of the juvenile when it adjudicated the juvenile a delinquent child against the manifest weight of the evidence."
 In his first assignment of error, appellant contends that the court should have granted his motion for acquittal because the State failed to prove beyond a reasonable doubt that: appellant fired the shots; attempted to purposely cause the death of Ward; and, did cause physical harm to Ward. The crux of appellant's first assignment of error is that the state's only testifying witness, Ward, was "ducked down" in the backseat of the car and, thus, unable to observe what actually transpired; i.e., Ward did not see appellant discharge the gun. In response, the state counters that: circumstantial evidence is intrinsically no different from testimonial evidence; there is no requirement that a victim's testimony be supported by corroborating testimony or other evidence; and, it is the duty of the trier of fact to assess the weight and credibility of testimony. Further, the state argues that the court was permitted to infer that appellant shot Ward.
Crim.R. 29, which governs motions for acquittal, provides, in pertinent part:
 "(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"
 Pursuant to Crim.R. 29, the trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Thus, a motion for acquittal pursuant to Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987), 33 Ohio St.3d 19, 23.
It is well established that a defendant is entitled to the unqualified right to have the prosecution prove every element of each offense charged beyond a reasonable doubt. See, e.g., State v. Kilby (1977),50 Ohio St.2d 21, 24. In the instant case, appellant was charged with attempted murder, in violation of R.C. 2923.02 and 2903.02, and felonious assault, in violation of R.C. 2903.11. Thus, for the crime of attempted murder, the state had the burden of proving each of the elements enumerated in R.C. 2903.02 and R.C. 2923.02. R.C. 2903.02 governs murder, and provides in pertinent part that: "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy." R.C. 2923.02 governs the crime of attempt and provides in pertinent part:
 "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 Appellant argues that the State did not present sufficient evidence that: (1) appellant was the person; (2) who purposely engaged in conduct which, if successful, would constitute the crime of murder. R.C. 2903.02 requires that the State prove that appellant acted purposely. "A person acts purposely when it is his specific intention to cause a certain result * * *." R.C. 2901.(22). "Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances, and the General Assembly has provided that intent to kill may be proven by inference." State v. Treesh (2001), 90 Ohio St.3d 460, 484-485. Further, the Ohio Supreme Court has stated that circumstantial evidence and direct evidence inherently possess the same probative value. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph one of the syllabus. In the instant case, Ward testified that appellant, while in close proximity to him, aimed a nine-millimeter gun at his head and pulled the trigger. Shortly thereafter, Ward sustained two nine-millimeter gunshot wounds. Ward testified that the only person he observed with a gun was appellant. The casings recovered from the scene were from a nine-millimeter gun; the same type of gun the appellant was brandishing.After reviewing the entire record, we determine that reasonable minds could reach differing conclusions as to whether appellant was the shooter and acted purposefully. The events at issue transpired quickly. Ward observed appellant attempt to shoot him in the head with a nine-millimeter gun through the side window of the car. He ducked. Moments later, two bullets from a nine-millimeter gun, fired through the rear window of the car, struck him. In light of the circumstances of this case, the state has proven beyond a reasonable doubt that appellant was the person who fired the nine-millimeter gun that discharged the two bullets that struck Ward. Intent to kill may be inferred when a person pulls the trigger of a loaded nine-millimeter gun aimed at another person's head.
R.C. 2903.11 governs felonious assault and provides, in pertinent part:
 "(A) No person shall knowingly do either of the following:
 "(1) Cause serious physical harm to another or to another's unborn;
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 It is undisputed that Ward sustained serious physical harm. He received two gunshot wounds and was life-flighted to Cleveland Metro Hospital, where he remained for eight days. Based on the circumstantial evidence in the case, discussed supra, a reasonable inference may be drawn to conclude that appellant fired the shots that struck and caused physical harm to Ward. Appellant's first assignment of error is without merit.
In his second assignment of error, appellant alleges that the judgment, adjudication of delinquency for the crimes of attempted murder and felonious assault, was against the manifest weight of the evidence. "Weight of the evidence concerns the `inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other * * *." [Emphasis in original]. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. When "the trial court's judgment [is] supported by some competent, credible evidence going to all the essential elements," we will not reverse its judgment. Seasons CoalCo. v. City of Cleveland (1984), 10 Ohio St.3d 77, 82.
Review of the entire record reveals that the judgment is not against the manifest weight of the evidence. The State presented a significant amount of credible evidence to prove that appellant attempted to murder Ward. The officers who investigated the case testified that Ward identified appellant as the individual who had shot him. Ward picked appellant's photograph out of a line-up. Ward testified that he had been employed by appellant's father and had known appellant since 1989. Additionally, Ward testified that immediately preceding being shot he observed appellant aim a nine-millimeter gun at his head and pull the trigger. The gun did not fire. Ward then ducked, in an attempt to avoid being shot, and was subsequently struck twice by bullets.
"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the instant case, the court, as the trier of fact, chose to believe Ward's testimony about what occurred at the time he was shot. Further, as stated by the Supreme Court of Ohio inState v. Post, "This court indulges `* * * in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" 32 Ohio St.3d 380,384.
In the case sub judice, the trial court did not lose its way or create such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's second assignment of error lacks merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
 ____________________________ JUDGE ROBERT A. NADER
FORD, P.J., CHRISTLEY, J., concur.
[1] Prior to changing his name on December 9, 1999, Idell Ferguson was known as Wardell Ferguson, II.
[2] Ward testified that there were additional unidentified people in the Oldsmobile. Detective Sayer testified that Jack Lederer, the driver stated that the only people in the red Oldsmobile were himself and Ward.